WILLIAM R. KIRKLAND and WILLIAM VON SACKS
*vs.* GEORGE W. KREBS.

*Scire facias—Statute of Limitations—Construction of the Acts of 1861, ch. 17, and 1862, ch. 249, known as the Stay laws.*

A *scire facias* was issued on the 24th of February, 1868, to revive a judgment recovered by the plaintiffs on the 29th of June, 1855. The defendant pleaded the Statute of Limitations. The plaintiffs replied that by virtue of the Acts of 1861, ch. 17, and 1862, ch. 249, they were precluded from having an execution on said judgment, for a period of more than seventeen months, and that so the limitation of twelve years from the date of the judgment did not apply. To this replication the defendant demurred. HELD:

That the stay laws did not deprive the plaintiffs of the right to keep their judgment alive by *scire facias*, during the stay of execution, and having failed to do so, the lapse of more than twelve years from the time when execution could have issued, was an effectual bar to the judgment.

APPEAL from the Superior Court of Baltimore City.

On the 24th of February, 1868, a *scire facias* was issued to revive a judgment which the appellants had recovered on the 29th of June, 1855, against the appellee. The defendant pleaded the Statute of Limitations. The plaintiffs replied that by virtue of the Acts of 1861, ch. 17, and 1862, ch. 249, known as the stay laws, they were precluded from having an execution on their judgment, from the 10th of May, 1861, to the 1st of November, 1862; and that from the date of the judgment to the issuing of the writ of *scire facias*, a period of twelve years had not elapsed during which it was lawful and proper for them to have had execution on said judgment.

To this replication the defendant demurred. The Court sustained the demurrer, and gave judgment in favor of the defendant upon the plea of limitations. The plaintiffs thereupon appealed.

Kirkland and Von Sacks *vs.* Krebs.

The cause was argued before BARTOL, C. J., STEWART, MILLÈR, ALVEY and ROBINSON, J. ·

*Stewart Brown* and *F. W. Brune,* for the appellants.

The stay laws, (or more particularly the stay law of 1861, which is the only one necessarily considered in this case,) during their continuance, prevented the effectual prosecution of the writ of *scire facias;* and as a consequence of such suspension of remedy, the running of limitations was also suspended.

And this is so, not only upon the general principal that such is the result of a legislative prohibition of suit or suspension of the remedy, but as the proper construction of the Act of limitations itself, which provides that in order to bar the action, the " thing in action" must have been "standing " for twelve years.   That is to say, in the case of a judgment, that the proper legal result of judgment, viz: execution, should have been, upon proper application, procurable during such period.   *Evans' Practice,* 164, (2d *Ed.,*) 203 ; *Salisbury vs. Black,* 6 *H. & J.,* 296 ; *Hall vs. Qresswell,* 12 *G. & J.,* 36 ; *Keefer vs. Zimmerman's Ex'rs,* 22 *Md.,* 274.

In the case of a judgment, the limitation runs not from the date, but from the time when the plaintiff is entitled to judicial process, *i. e.,* execution to enforce it.   Thus, if stay of execution be entered on the docket, from the expiration of the stay.   *Mullikin vs. Duvall,* 7 *G. & J.,* 355 ; *Mitchell vs. Chesnut, &c.,* 31 *Md.,* 521.

The operation of the stay law of 1861, on judgments generally, and on this judgment in particular (on which at the time, *scire facias* was necessary before execution) was, that the statute certainly took away that which the authorities look to as an essential to cause the running of the Statute of Limitations, that is to say, "judicial process to enforce it," obtainable immediately by simple order, or after *scire facias* upon a judicial award.   And further, the stay law not only thus rendered the proceeding practically ineffectual, even if *fiat executio* could

have been entered, in the face of the statute, but the statute itself could have been pleaded as an effectual bar to the writ, which writ expressly calls on the defendant to show caused why execution should not issue, and the judgment on which is not that of an ordinary recovery "*quod recuperet,*" but an award of execution "*fiat executio.*" *Campbell vs. Booth,* 8 *Md.,* 107, *and* 15 *Md.,* 569; 8 *Bacon's Abridgt.,* title *Scire facias,* 598; *Foster's Scire facias,* 73 *Law Library,* 11 *to* 16.

*Arthur W. Machen* and *I. Nevett Steele,* for the appellee.

The stay law of this State, in suspending for a limited term the right of *execution and sale,* did not close the Courts, nor interfere with any rights of action of creditors. The whole object of the Legislature was to protect the property of the debtor from actual seizure and sale, at a time when the condition of affairs was such that forced sales would probably have involved ruinous sacrifices. Suits and actions, and indeed all judicial proceedings went on as before.

In the condition in which the judgment in question was at the time of the enactment of the stay law in 1861, that Act had no practical operation upon it at all. More than three years having elapsed since the date of the judgment, without any measures to keep it alive, it was not then fitted for execution. Before they could obtain execution, it was necessary for the plaintiffs to revive it by debt or *scire facias.* Had they thereupon so revived it, which there was nothing then to prevent, the stay law would have operated upon the new judgment, and suspended execution of it for the prescribed term. They did nothing, however. The judgment remained as it was, until the statutory period of twelve years expired, and the bar created by the Code, Art. 57, sec. 3, became complete. *Mullikin vs. Duvall,* 7 *G. & J.,* 355; *Mitchell vs. Chesnut,* 31 *Md.,* 54.

The stay law did not *in terms* interfere with the limitation in question, or create a new exception to the running of the

general statute. And there was nothing in the nature of such a stay law to operate an exception by necessary *implication.*

Every creditor "has a *common law right to judgment,* and only the express words of a statute will suffice to exclude him from that right." *Sir Fitzroy Kelly, C. B. Wright vs. Jelly, Law Rep.,* 4 *Ex.,* 12.

A judgment, whether dormant or active, subject to the restrictions of a stay law, if renewed by *scire facias,* would necessarily have been renewed subject to the same conditions: just as a judgment subject to a discharge under the insolvent law, would, when revived be taken, subject to the same condition or qualification, so that the discharge, to be availing, need not be pleaded under the *scire facias. Huston vs. Ditto,* 20.*Md.,* 328.

ROBINSON, J., delivered the opinion of the Court.

A *scire facias* was issued on the 24th February, 1868, to revive a judgment recovered by the plaintiffs on the 29th June, 1855, to which the defendant pleaded the *Statute* of Limitations, and the question is whether the statute was suspended as against this judgment during the stay of execution and sale, prescribed by the Acts of 1861, ch. 17, and 1862, ch. 249, known as the *stay laws.*

That the Legislature did not intend to interfere with the statutory limitations in regard to judgments we think quite clear, for although the above Acts of Assembly expressly declare that the stay thereby prescribed, shall not be computed as part of the three years within which execution may issue, we find no such provision or exemption in regard to the judgment itself. Moreover, it is well known that these laws were passed soon after the commencement of the late war, and the purpose, *the sole purpose,* was to protect the property of the debtor from seizure and sale, at a time when the condition of affairs was such that *forced sales* would have proved ruinous to the debtor.

Kirkland and Von Sachs *vs.* Krebs.

But it was insisted that the operation of these laws deprived the plaintiff of the effectual prosecution of his remedy by *scire facias*, and that the suspension of the Statute followed as a necessary consequence upon this suspension of the remedy. Now, it is true, the term cause of action implies the right of action, and hence certain exceptions, have been engrafted upon the Statute, not perhaps within its letter, as for instance, where there is no person capable of suing or being sued, or when a temporary incapacity to sue grows out of some particular provision of a statute. *Trecothick vs. Austin,* 4 *Mason's Cir. Ct. Rep.*, 16; *Dowell vs. Weber,* 2 *Smedes & Mars.,* 452; *Tarver vs. Cowart,* 5 *Ga.,* 66; *Murray vs. The East India Co.,* 5 *Barn. & Ald.,* 204. To permit the Statute to run in such cases, where no *laches* can be imputed to the parties, and where it is impossible, by suit or otherwise, to prevent its operation, would not only be extremely unjust, but, in the language of the authorities, contrary to the conclusions of reason that the framers of the Statute so intended. The exceptions, therefore, in such cases, are put upon the express ground that the parties are deprived of all remedy whereby the cause of action may be kept alive.

Now, if the stay laws, in addition to the stay of execution and sale, had provided that no action by *scire facias* or otherwise, should be brought upon the judgment during the stay, it might be contended that the time during which such temporary disability continued, should be excluded from the computation. But we are at a loss to understand why a *stay* of *execution* is to be considered as denying to the plaintiff the right to bring an action upon the judgment either by debt or *scire facias*. To the latter the defendant has the right to plead, and although generally termed a judicial writ, it is classed and recognized by all the authorities as an action. 2 *Tidd's Practice,* 1090; *Evan's Practice.* The object of a *scire facias*, we admit, is to obtain a judgment capable of being enforced, but subject, nevertheless, to such restraints and dealings as the law itself may impose. It was never

supposed that the stay laws of 1861 and 1862 interfered with the right of action. Suits were brought as before, although the judgment, when rendered, was subject to the stay therein prescribed, and it would be unreasonable to suppose the Legislature intended to put a specialty creditor upon an inferior footing to that enjoyed by a simple contract creditor. If, then, the plaintiffs had the right to keep their judgment alive by *scire facias* during the stay of execution, there is no reason why it should be exempted from the operation of the statutory law of twelve years.

The question as to whether the Statute begins to run from the date of the judgment or the expiration of the stay, can have no practical bearing upon this case, and it is, therefore, unnecessary to consider it. Here more than three years had elapsed from the date of the judgment, when the stay laws were passed, and more than twelve years from the time when execution could issue thereon, before the *scire facias* was sued out.

. For these reasons, we are of opinion that the judgment ought to be affirmed.

*Judgment affirmed.*